**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**ROSA ROSAS ,**

                **Plaintiff,**

      **-AGAINST-**

**ARROW FINANCIAL SERVICES, LLC**
**ASSET RECOVERY SOLUTIONS,LLC**
**KIRSCHENBAUM & PHILLIPS, P.C. (f/k/a**
**KIRSCHENBAUM, PHILLIPS & ROACH,**
**P.C.)**
**LVNV FUNDING LLC**
**RESURGENT CAPITAL SERVICES LP**
**ALEGIS GROUP, LLC**

                **Defendants.**

**No.Civ.:_____**

**COMPLAINT**
**JURY DEMAND**

---

      Plaintiff Rosa Rosas brings suit against Defendants for their violations of the Fair Debt

Collections Practices Act, 15 U.S.C. § 1692 et seq.; New York General Business Law § 349;

and New York Judiciary Law § 487, and in support would show as follows.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2.      The Court has federal question jurisdiction over the lawsuit because the action arises

under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. Jurisdiction of

the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of

federal law, the FDCPA. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over

Plaintiff's state law claims because said claims are so related to the claims within the Court's

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue in this district is proper because all or a substantial part of the events or omissions giving rise to the claims occurred in Kings County, New York.

4.     Plaintiff is an individual who resides in Kings County, New York.

## PARTIES

5.     Defendant Arrow Financial Services, LLC ("Arrow Financial") is a foreign limited liability company organized and existing under the laws of the state of Delaware. Arrow Financial engages in business in New York and maintains a designated agent for service of process in New York.

6.     Defendant Kirschenbaum & Phillips, P.C. (f/k/a Kirschenbaum , Phillips & Roach, P.C.) ("Kirschenbaum") is a debt collection law firm with its principal place of business at 40 Daniel Street, Suite 7, Farmingdale, New York 11735.

7.     Defendant LVNV Funding LLC ("LVNV") is a foreign limited liability company organized and existing under the laws of the state of Delaware. LVNV engages in business in New York and maintains a designated agent for service of process in New York. This suit arose out of said Defendant's business in New York.

8.     Defendant Asset Recovery Solutions, LLC ("Asset Recovery") is a domestic limited liability company with its principal place of business at 350 Fifth Avenue, Suite 3304, New York, NY 10118. Said Defendant engages in business in New York, and this suit arose out of

said Defendant's business in New York. Asset Recovery may be served at their place of business 350 Fifth Avenue, Suite 3304, New York, NY 10118.

9.     Defendant Resurgent Capital Services ("Resurgent") is a limited partnership organized and under the laws of the state of Delaware. Resurgent engages in business in New York but does not maintain a designated agent for service of process in New York. This suit arose out of Resurgent's business in New York.  Resurgent may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. The New York Secretary of State may then forward a copy of the summons and complaint to the address it has on file for Resurgent, Resurgent Capital Services, L.P., P.O. Box 770549, Houston, TX, 77215 (Harris County).

10.    Defendant Alegis Group, LLC ("Alegis") is the general partner of Resurgent and is liable for the debt collection violations and other actions of Resurgent.  Alegis is a limited liability corporation organized under the laws of the state of Delaware.  Alegis engages in business in New York, but does not maintain a designated agent for service of process in New York. This suit arose out of Alegis' business in New York.  Alegis may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231. The New York Secretary of State may then forward a copy of the summons and complaint through its Delaware registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801(New Castle County).

## FACTUAL ALLEGATIONS

11.    On or around January 18, 2008, Arrow Financial, by its attorneys, Rubin & Rothman, LLC, filed a consumer collection action in Kings County Civil Court against Rosa Rosas.  The

3

action sought to collect a debt owed on GE Money Bank credit card in the amount of $1,193.32 plus interest. The case was captioned *Arrow Financial v. Rosa Rosas*, index number 008449/08. Ms. Rosas was never served with the summons and complaint and, as a result, was not aware of the case. A true and correct copy of the summons, complaint, affidavit of facts, and (false) affidavit of service are attached as Exhibit A and are incorporated by reference in their entirety.

12.     Typically, GE Money Bank issues credit card for the purchase of furniture or other household goods.  Most frequently, these credit cards are issued at the store at the time the furniture or household goods are being purchased.

13.     Ms. Rosas has never had a credit card with GE Money Bank and has never purchased furniture or other household items on credit.

14.     Because she was never served Ms. Rosas did not know she had been sued and did not appear in the action.  On April 8, 2008, Arrow Financial obtained a default judgment against Ms. Rosas in the amount of $1,357.46.  The amount of the judgment included $125.00 in costs of court. A true and correct copy the default judgment is attached as Exhibit B and is incorporated by reference in its entirety.

15.     In order to obtain the default judgment Arrow Financial filed an Affidavit of Merit with the Court.  Include in the Affidavit of Merit was the account number for the account in question, CG8893380537849.

16.     Ms. Rosas discovered the judgment on or around February 6, 2012 when Arrow Financial attempted to garnish her wages.

4

17.     After discovering the judgment, Ms. Rosas contacted CAMBA Legal Services, Inc., a non-profit legal services provider, and obtained representation.

18.     With the help of her attorney Ms. Rosas moved by Order to Show Cause to vacate the default judgment against her.

19.     On March 29, 2012, the return date for Ms. Rosas' Order to Show Cause, Arrow Financial and Ms. Rosas' attorney executed a stipulation vacating the default judgment, lifting any liens or restraints, and returning any monies taken from Ms. Rosas. Ms. Rosas also stipulated that she would serve an answer within 20 days.

20.     On April 12, 2012, Ms. Rosa's filed an Answer stating a number of affirmative defenses including that she was not indebted to Arrow Financial.

21.     No litigation activity took place after Ms. Rosas filed her Answer.

### *The November 5, 2013 collection letter.*

22.     Surprisingly, in November of 2013 collection efforts began against Ms. Rosas seeking to recover the same debt that was the subject of the collections lawsuit.

23.     These efforts began on or around November 5, 2013, when LVNV, through and on the letterhead of Asset Recovery, sent a letter seeking to collect the putative debt. A true copy of the November 5, 2013 letter is attached as Exhibit C and incorporated by reference in its entirety. The letter violates the FDCPA in a number of ways.

24.     The November 5 letter was sent directly to Ms. Rosas, ex parte, making an end-run around her counsel.

25.     The November 5, 2013 letter sought to collect an account number CG8893380537849, the same account number identified in the Affidavit of Merit filed in the lawsuit against Ms. Rosas.  Confusingly, the letter claimed the putative original creditor was "General Electric Capital Corporation," while the original collection lawsuit claimed the putative original creditor was "GE Money Bank."

26.     The November 5. 2013 letter also claimed the current creditor was LVNV, not Arrow Financial.

27.     Ms. Rosas did not know of a creditor named LVNV.

28.     Ms. Rosas had not received, either directly or through her counsel, any notification that the account that was the subject of the lawsuit had been assigned from Arrow Financial to LVNV, or, for that matter, even from GE Money Bank to Arrow Financial.

29.     Without a notice of assignment sent to and received by the consumer, a putative assignor of a debt has no legal right to seek to collect the debt.

30.     The November 5, 2013 letter stated the current balance of the account was $2,037.24. This misrepresents and inflates the amount of the debt in relation to the amount Arrow Financial Services, LLC claimed to be due in the January 18, 2008 collection lawsuit. In the collection lawsuit, Arrow claimed the amount due was "1,193.32, with interest on 1,193.32 from 11/26/07 at the rate of 9.00 % per annum."   Based on these numbers the amount due as of the date of the collection letter should be no more than $1,792.69. However, the collection letter inflated the amount of the debt on the putative account by $244.55. One reasonable inference from the inflated amount is that the November 5, 2013 collection letter is based on the previously vacated

default judgment and includes the amount of costs of court ($125) that were initially awarded in the default judgment, as well as 9 % post judgment interest on those costs of court.[1] In sum, the November 5 letter misrepresented the amount of the debt, and sought to collect amounts not expressly allowed by law.

31.     More fundamentally, Ms. Rosas apparently did not owe the debt in any case. Ms. Rosas, to her knowledge, has never had a credit card account with GE Money Bank and has never purchased furniture or household goods on credit, GE Money Bank's main form of lending. Ms. Rosas stated the same in her March 12, 2012 in her motion to vacate the April 8, 2008 default judgment and  Arrow Financial (the plaintiff in the collection lawsuit) was on actual notice the debt was not owed.

32.     A standard term in the sales and assignment of putative debts between debt buyers such as Arrow Financial, Asset Recovery, and LVNV, disclaims any warranties as to the accuracy of the information on the accounts being sold, and, on information and belief, the sales and assignment agreements as to the putative debts contained such a disclaimer.

33.     Within 30 days of her receipt of the November 5, 2013 collection letter, Ms. Rosas mailed LVNV, through Asset Recovery, a letter dated December 4, 2013 demanding verification of the debt, asked the identity of the current creditor for the putative debt, enclosing a copy of the stipulation vacating the default judgment, and a demand that the verification be sent to her counsel at CAMBA, who she identified. LVNV and Asset Recovery ignored the letter. A true and correct copy of that letter is attached as Exhibit D, and is incorporated by reference in its entirety.  Asset Recovery received Ms. Rosas' letter no later than December 7, 2013.

---

[1] However, even including the costs of court and interest on the same from the date of judgment, the November 5, 2013 still inflates the amount of the debt by an additional $56.77.

34.     Neither Ms. Rosas nor CAMBA Legal Services received a response to her request for verification.

*The November 26, 2013 collection letter.*

35.     On or about November 26, 2013, the debt collection law firm Kirschenbaum, Phillips & Roach, P.C. sent Ms. Rosas another collection letter. This letter was the initial communication from Kirshenbaum to Ms. Rosas. Like the November 5, 2013 letter, this letter also violates the FDCPA in a number of different ways. The letter is attached as Exhibit E and is incorporated by reference in its entirety.

36.     The November 26, 2013 letter was sent ex parte directly to Ms. Rosas, making an end run around her attorney.

37.     The November 26, 2013 letter does not effectively communicate who the current creditor is. The letter lists the name "Arrow Financial Services, LLC," but does not identify who that is, or its relationship to the putative debt. The letter does not reference LVNV in any manner.

38.     The letter also misstates (and inflates) the amount of the debt in relation to the amount Arrow Financial Services, LLC claimed to be due in the January 18, 2008 collection lawsuit. In the collection lawsuit, Arrow claimed the amount due was "$1,193.32, with interest on $1,193.32 from 11/26/07 at the rate of 9.00 % per annum."   Based on these numbers, the amount due on the date of the letter should only be $1,838.30.  However, the November 26, 2013 collection letter states the "current balance: $1,982.90," and that the amount "Includes interest from Judgment Date: April 8, 2008." This is an increase of $144.60 from the amount claimed due in

the suit. Perhaps part of the $144.60 increase is the principal amount of the $125 in court costs initially awarded in the judgment, a judgment of course which was subsequently vacated.

39.     The November 26, 2013 demands payment for a judgment despite the fact that no judgment exists. The letter also instructs Ms. Rosas to call if Ms. Rosas wishes "to enter into arrangements to satisfy this judgment."

40.     The November 26, 2013 letter was sent on attorney letterhead, implying to the least sophisticated consumer that an attorney at the firm had done a meaningful attorney review. On information and belief, no attorney performed a meaningful attorney review of the letter, but is simply a mass-produced form letter.

41.     According to testimony in a separate case, KIRSCHENBAUM, PHILLIPS & ROACH, P.C., a very small law firm, was collecting on approximately 65,000 putative judgments around the time the November 26, 2013 letter.

42.     Any meaningful review would have 1) determined the name of the creditor; 2) determined whether the judgment had been vacated, by, for example, checking on the on the public E-Court's website whether an order to show cause had been filed to vacate the judgment; 3) determined the correct amount due; 4) determined whether a notice of assignment of the putative debt from GE to Arrow or from Arrow to LVNV had ever been sent to the consumer, 5) determined that the consumer was represented by an attorney, information which is also listed on the E-Court's website and which could have been obtained from Arrow or LVNV, or 6) reviewed the attorney's own file which likely would have contained basic information such as whether Ms. Rosas had a judgment against her or was represented. Instead, on information and belief, the November 26, 2013 letter is a mass-produced form letter.

43.     The November 26, 2013 letter is particularly confusing when read in conjunction with the letter sent three weeks prior, November 5, 2013. The last 4 digits of the account numbers referenced in the letters are the same.. The November 5, 2013 letter states the creditor was LVNV while  the November 26, 2013  letter does not reference LVNV at all. The November 5, 2013 letter does not state the nature of the debt while the November 26, 2013  states it is for collection of a judgment. Most confusingly, not only did both letters inflate the amount of the debt, but the current balance inexplicably dropped in three weeks, calling into question the accuracy of any of the information.

44.     The November 26, 2013 letter also stated that Kirschenbaum has been "substituted" as the attorneys "in the above matter." However, upon information and belief, the court file reflects no substitution of counsel, nor has Ms. Rosas, either directly or through counsel, has ever received such a substitution.

45.     In response to the November 26, 2013 collection letter, on December 4, 2013 Ms. Rosas sent a letter to Kirschenbaum demanding verification of the debt, enclosing a copy of the stipulation vacating the default judgment, and a demand that the verification be sent to her counsel at CAMBA, who she identified. A true and correct copy of that letter is attached as Exhibit F, and is incorporated by reference in its entirely.

46.     Neither Ms. Rosas nor CAMBA Legal Services received any response to this letter.

### *The December 9, 2013 letter.*

47.     Kirschenbaum received Ms. Rosas' letter on December 4, 2013, and no later than December 6, 2013.

48.     Rather than responding to the verification demand, Kirschenbaum sent the letter dated
December 9, 2013 attached as Exhibit G.  The letter violates the FDCPA in a number of ways.

49.     The December 9, 2013 letter continues to seek to collect the non-existent judgment when
Kirschenbaum, and its principals LVNV and/or Arrow, were required to cease collection activity
until the debt was verified. Whatever a reasonable verification entails, certainly it entails looking
at the order vacating the putative judgment that Ms. Rosas mailed to Kirschenbaum on
December 4, 2013.

50.     The December 9, 2013 letter was sent ex parte directly to Ms. Rosas, making an end run
around her CAMBA Legal Services attorney. As previously noted, the name and address of Ms.
Rosas' CAMBA Legal Services attorney was listed 1) on the order to show cause to vacate the
sewer service default judgment, 2) the public E-Court's website, 3) presumably in the records of
Arrow or LVNV, and 4) Ms. Rosas' letters of November 26 and December 9, 2013.

51.     The December 9, 2013 letter stated that an enforceable judgment remained, when the
judgment had been vacated.

52.     The letter also included the language require by C.P.L.R.§ 5222(d).  This section requires
that notice, as spelled out in C.P.L.R. § 5222(e), be given to judgment debtors prior to the service
of a restraining notice.  This notice will last one year.  If a judgment creditor wishes to issue a
restraining notice after a year has expired, then a new notice must be served.

53.     In other words, after receiving Ms. Rosas' letter and a copy of the stipulation vacating the
judgment, Kirschenbaum then took a step to enforce that judgment.

54.     In the December 9, 2013 letter Arrow, through Kirschenbaum, threatened Ms. Rosas that her "[m]oney or property" may be seized to satisfy the judgment. As no judgment actually existed this was a threat to take an action prohibited by law.

55.     The December 9, 2013 letter further threatened to the least sophisticated consumer that her money or property may be executed upon if she did not settle the account by stating she needed to contact the "ATTACHMENTS DEPT EXECUTIONS" in order "to discuss settlement."

56.     The December 9, 2013 letter represented to the least sophisticated consumer that an attorney had meaningfully reviewed the specific facts and circumstances of her account. This representation was emphasized to the least sophisticated consumer by the fact, *inter alia*, that 1) the letter stated the name of the firm on the signature block and at the address for the mailing of correspondence; 2) the letter threatened that "money or property" may be seized to satisfy the judgment; 3) that she needed to call the department at the law firm that dealt with attachments and executions in order to discuss settlement; and 4) the letter included no disclaimer that no attorney at the firm had done a meaningful review of the facts and circumstances of her account.

57.     As with the November 26, 2013 collection letter, a meaningful review by an attorney of the facts and circumstances regarding Ms. Rosas's account would have 1) determined the name of the creditor; 2) determined whether the judgment had been vacated, by, for example, checking on the on the public E-Court's website whether an order to show cause had been filed to vacate the judgment; 3) determined the correct amount due; 4) determined whether a notice of assignment of the putative debt from GE to Arrow or from Arrow to LVNV had ever been sent to the consumer, and 5) determined that the consumer was represented by an attorney,

information which is also listed on the E-Court's website and which could have been obtained from Arrow or LVNV. Instead, on information and belief, the December 9, 2013 letter is a mass-produced form letter.

58.     In response to the December 9, 2013 letter from Kirschenbaum, Ms. Rosas sent Kirschenbaum another letter on December 19, 2013. Like her previous letters, this letter requested that Kirschenbaum verify the putative debt, identify the current creditor, and direct verification to her attorney, who she identified in her letter.

59.     Neither Kirschenbaum, Arrow, LVNV, or anyone else responded to Ms. Rosas' letter of December 19, 2013.

60.     The attempts to collect the non-existent judgment inflicted emotional distress on Ms. Rosas that affected her activities of daily living. Ms. Rosas thought the judgment was long taken care of, the renewed attempts to collect the judgment renewed the anxiety Ms. Rosas felt when she initially discovered the judgment.

61.     The attempts to collect the non-existent judgment inflicted emotional distress on Ms. Rosas that affected her activities of daily living. When she received the collection letter she was shocked, and was afraid they would garnish her paychecks. Ms. Rosas thought the judgment was long taken care of, the renewed attempts to collect the judgment renewed the anxiety Ms. Rosas felt when she initially discovered the improper judgment. Ms. Rosas was constantly worrying what she was going to do. Ms. Rosas was stressed, worried about them collecting on a judgment that was vacated for a debt she believes she never owed. She thought about this often, and it made it difficult to sleep. She would often get up out of bed late at night and go to her living because she could not sleep. When she could sleep, the sleep was not restful. She was constantly

thinking about it, making it difficult to concentrate at work.  She was particularly upset at the threats that they would take money from her because she believed she did not owe the debt sought to be collected. She had a son who was going to school that she was helping pay for, so the stress that her wages may be garnished was especially stressful. Her budget was tight, and she needed her wages to pay for basic essentials like rent, and was afraid what would happen if she could not pay her rent because of a garnishment.

## FIRST CLAIM FOR RELIEF
### (Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*)

62.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

63.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also* Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope").

64.     Congress designed the FDCPA to be enforced primarily through private parties – such as Plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5 (1977) ("The committee views this legislation as primarily self-enforcing; consumers who have been subjected to collection abuses will be enforcing compliance"); Jacobson v. Healthcare Fin.

Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others").

65.     The credit card debt Defendants allege Plaintiff owes is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was incurred primarily for family, personal, or household purposes.

66.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because she is alleged to owe a "debt."

67.     Each of the Defendants is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because the principal purpose of their businesses is the collection of debts and they regularly attempt to collect debts, either directly or indirectly.

68.     Defendant Arrow Financial is a "debt collector" as defined by the FDCPA because it purchases or services thousands of alleged consumer debts after those debts are in default with the putative original creditor. Arrow Financial attempts to collect these debts directly, or indirectly through debt collection law firms or services who make collection phone calls, send collection letters, or otherwise collect putative consumer debts.

69.     Defendant Kirschenbaum is a law firm engaged in the business of collecting debts by filing collection lawsuits on behalf of putative creditors or debt buyers; attempting collect on over 60,000 putative judgment in 2013 alone; by making collection phone calls; and by sending out collection letters. Kirschenbaum regularly collects consumer debts alleged to be due to

another, and that is its primary purpose. Kirschenbaum is thus a "debt collector" as defined by the FDCPA.

70.     Defendant LVNV is a "debt collector" as defined by the FDCPA because it purchases or services thousands of alleged consumer debts after those debts are in default with the putative original creditor. LVNV attempts to collect these debts directly, or indirectly through debt collection law firms or services who make collection phone calls, send collection letters, or otherwise collect putative consumer debts.

71.     Resurgent Capital Services, LP is the master servicer for LVNV.  Resurgent is assigned rights to seek to collect the charged off consumer debts, but is not assigned title or ownership to the debt, which purportedly remains with LVNV.

72.     Resurgent LP collects these debts directly or through sub-servicers. On information and belief Asset Recovery and Kirschenbaum are subservicers for the putative debt sought to be collected from Ms. Rosas. On information and belief, Resurgent LP exercises control or has the right to exercise control over the accounts it sends to sub-servicers.

73.     At all times Resurgent Capital Services, LP was acting as the agent and purported master servicer of LVNV in seeking to collect the putative debt from Ms. Rosas.

74.     At all times relevant to this suit Asset Recovery was acting as the agent of LVNV and Resurgent, and therefore the latter is liable for the acts of the former.

75.     Alegis Group, LLC is a general partner of Resurgent. Alegis is also a debt collector because it attempts to collect debts indirectly, through Resurgent and through the sub-servicers

and collection law firms retained by Resurgent. Alegis is responsible for the management of Resurgent Capital Services, LP.

76.     Defendant Asset Recovery is a "debt collector" as defined by the FDCPA because it purchases or services thousands of alleged consumer debts after those debts are in default with the putative original creditor. Asset Recovery attempts to directly collect these debts by regularly making telephone calls and sending collection letters, such as those sent to Plaintiff, and that is Asset Recovery's primary purpose.

77.     The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

78.     In taking these actions, Defendants materially violated the following sections of the FDCPA: 15 U.S.C. § 1692c, 1692d, 1692e, and 1692f. Specifically, Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: communicate with a consumer regarding a debt if the collector knows the consumer is represented by an attorney in the matter and the attorney's name and address is known or can be readily ascertained by the debt collector; continuing to attempt to collect a debt after a timely demand for verification; engaging in conduct the natural consequence of which is to harass, oppress, or abuse Ms. Rosas; using false, deceptive or misleading representations or means;  false representation of the character, amount, or legal status of the debt; the false representation of the compensation which may lawfully be received; threatening to take (and actually taking) any act prohibited by law; using any false representations or means; and using unfair or unconscionable means to collect; the collection of or attempt to collect any amount

(including any interest, fee, charge, or expense incidental to the principal obligation) unless the amount is expressly authorized by law or contract; taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if the property is exempt by law from such dispossession or disablement.

### SECOND CLAIM FOR RELIEF
### (NEW YORK  GENERAL  BUSINESS  LAW § 349 ET SEQ)

79.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

80.    New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state."

81.    An individual "injured  by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action."  N.Y. Gen. Bus. Law§ 349(h).

82.    As enumerated  above,  Defendants  violated N.Y.  Gen.  Bus. Law § 349 et seq. by using deceptive acts and practices in the conduct of their businesses.  This includes sending writing communications that fail to properly identify the creditor or amount due. This includes attempting to collect on vacated judgments. This further  includes  robo-signing  post- judgment executions and collection letters, impliedly representing to consumers that an attorney had performed a meaningful review prior to issuing the execution or collection letter when in fact no such review occurred. These acts were done by Defendants systematically, and as such, has a broad impact on consumers at large.

83.    Defendants committed the above described acts willfully and/or knowingly.

84.     Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

85.     As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 et seq., Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, as to recover actual and treble damages, costs and attorney's fees.

### THIRD CLAIM FOR RELIEF
### (NEW YORK JUDICIARY LAW § 487 ET SEQ. (AS TO KIRSCHENBAUM))

86.     New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

87.     Kirschenbaaum violated § 487 by robo-signing post- judgment executions and collection letters, impliedly representing to consumers that an attorney had performed a meaningful review prior to issuing the execution or letter when in fact no such review occurred.

88.     The violations of § 487 by Kirschenbaum inflicted damages for the reasons and in the manner previously indicated.

89.     Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487 by Kirschenbaum, and Plaintiff so seeks.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants for the following:

90.     Statutory damages, including $1,000.00 pursuant to 15 U.S.C. § 1692k;

91.     A declaration that Defendants violated the FDCPA as alleged;

92.     Actual damages within the jurisdictional limits of the court;

93.     Attorneys' fees and costs;

94.     General relief;

95.     An order enjoining  and directing all Defendants  to cease violating G.B.L. § 349 et seq.;

96.     Civil penalties under G.B.L. § 349 against all Defendants;

97.     Treble damages under G.B.L. § 349 against all Defendants;

98.     Treble damages and an order awarding disbursements, costs, and attorneys' fees under Judiciary Law § 487 against Kirschenbaum;

99.     All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial in this action.

October 31, 2014
Brooklyn, New York

Respectfully submitted,

/s/

_____
Matthew Schedler, Esq., Of Counsel (MS-3774)
Madeline La Forgia, Esq., Director
CAMBA Legal Services, Inc.
885 Flatbush Ave., 2nd Floor
Brooklyn, NY 11226
Phone: (718) 940-6511

Fax: (718) 462-5537
Email: MatthewSc@CAMBA.org

/s/

_____
Ahmad Keshavarz
THE LAW OFFICE OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
*Attorneys for the Plaintiff*